ALICE L. GREENE, *by her next friend, v.* R. J. SMITH.

[In Chancery.]

*Estoppel. Gross Negligence. Gross Fraud. Innocent Mistake. Settlement of Estates. Probate Court.*

1. In 1870 A built a house on land which he supposed was his, but in fact was owned by B, who was present and made no objection. In 1872 A mortgaged the premises to C, and B witnessed the deed ; and subsequently A conveyed to C by warranty deed to extinguish the mortgage. On the death of C in 1881, and the appointment of appraisers, B pointed the house out to them, saying that it belonged to C's estate ; and it was appraised as such, and assigned by the Probate Court to the oratrix, C's daughter, as her distributive share. The referee found, that B first knew in 1875 that the house stood on his land ; and that there was no evidence which showed that the oratrix was influenced by what B said or did, in accepting the house. *Held,* that B's conduct amounted to *gross negligence or gross fraud,* and in either case he should be *estopped* from claiming the house.
2. The court do not regard it a case of *innocent mistake,* but hold , (*a*) that standing by and seeing the house built on his land, without objection, and witnessing the mortgage deed, ought to estop B ; and (*b*) after he was aware of the ownership, aiding in making the inventory and appraisal, and asserting that the house, with right of way around it, belonged to C's estate, also ought to estop B ; and he should be compelled to deed to the oratrix.

BILL IN CHANCERY. Heard on bill, answer, and the report of a special master, September Term, 1883, Franklin County, ROYCE, Chancellor. Decree that the bill be dismissed.

The oratrix is a married woman; and petitioned the court by William G. Greene, her husband, as her next friend. The bill prayed that the defendant Smith be decreed to deed the house and lot to the oratrix and to give up possession. It appeared from the report that when the mortgage deed was executed by Silas Smith to Evarts, that it was read over in the presence of the defendant; that when the appraisers were shown over the house and lot by the defendant, he knew that they were there for the purpose of appraising it; that the premises were situated in Georgia; and that the defendant had been in possession for several years, but how, or on what terms, it did not appear. The other facts are sufficiently stated in the opinion.

*Farrington & Post,* for the orators.

The oratrix is entitled to the house and land. The defendant is estopped, (1) by his conduct in allowing the building to be erected ; (2) by his witnessing the mortgage; (3) by his words and acts when the house was appraised. If he owned the land he knew or might have known his boundaries from his deed; and it was gross negligence, not to know. His conduct with the appraisers estops him from now claiming the house. Big. Fr. 438, 440; *Strong* v. *Ellsworth,* 26 Vt. 366; *Cady* v. *Owen,* 34 Vt. 598.

*Wilson & Hall,* for the defendant.

The defendant is not estopped by reason of anything he said or did when the house was being built and the mortgage was executed; because he did not know till long after—1875—that he owned the land. The defendant's conduct with the appraisers does not estop him. They were not influenced in their action by what he did; as the administrator had directed them to appraise the property. The oratrix did not rely upon anything the defendant said to the appraisers about the title. Hence, two essential elements are wanting: the oratrix was not influenced by

defendant's conduct; the defendant had no knowledge of his ownership. *Wooley* v. *Edson*, 35 Vt. 214; *Bucklin* v. *Beals*, 38 Vt. 653; *Wheeler* v. *Willard*, 44 Vt. 640; *Burnell* v. *Mallory*, 39 Vt. 579; *Thrall* v. *Lathrop*, 30 Vt. 307; *Boynton* v. *Braley*, 54 Vt. 92.

The opinion of the court was delivered by

REDFIELD, J. In the fall of 1870, Silas Smith, father of the defendant, built a house on land, the legal title of which was in the defendant; the defendant was present when the house was being built and made no objection. In May, 1872, the said Silas mortgaged said house and lot to Joseph Evarts for $1,000 borrowed money; and defendant knew of the fact, and signed the mortgage, as a witness; at the same time Silas assigned the insurance policy on said premises, in which he had represented that he owned the premises free of incumbrance; and defendant guaranteed the premium note, which had become necessary by reason of the mortgage. Said Evarts died intestate on the 2d day of April, 1881; the orator, W. G. Greene, was appointed administrator on his estate; appraisers were duly appointed by the Probate Court, who appraised this house and land, as being a part of the estate of said Evarts; the defendant was present and went over the premises with the appraisers, and told them that the house and the land on which it stood, and a chance to go around the house, were the property of said Evarts' estate.

The oratrix is the daughter of said Evarts, and these premises were assigned to her by the Probate Court as her distributive share of her father's estate, and the administrator, under license of the Probate Court, conveyed the same to the oratrix, on 3d of February, 1882.

The referee states, that defendant did not know that the house stood on his land until 1875, and that he then told said Silas that fact, which Silas denied; and that in 1880, defendant told said Evarts that he owned the land on

which the house stood. And the referee reports that there was no evidence to show that the oratrix in taking a deed of said premises was influenced thereto by what the defendant had said and done in regard to said property.

The defendant was present when his father dug his cellar, and laid the foundation walls of the house, and saw him from time to time building the house; which is the most unequivocal consent to its being built, where, and as it was built. Defendant knew of the mortgage to Evarts for its full value; and witnessed the deed. These facts alone will estop the defendant from drawing in question the father's title to said premises, unless his ignorance of his own title is an excuse. It is generally true, that an innocent mistake as to the facts stated and relied upon will not be permitted to estop one from averring the truths.

The land on which this house was built, was purchased by defendant of one Webster, and conveyed to him in January 7, 1867. The description in the deed "begins at the southeast corner of defendant's farm in the highway, thence easterly on the highway 14 rods and 22 links," and the house was built near the terminus of this line, as we infer from the papers in the case. The value of the small piece of land on which the house stood was trifling, as the whole consideration in the deed from Webster of several acres is but $75.00; the exact boundaries of the defendant's land are obvious, or could easily be made so. The defendant knew at the time his father was building his house, if not placed upon his land, it was very near to it; and if the defendant then intended, if the building should chance to be on his land, to thereafter appropriate it to himself, it is such gross carelessness and indifference to the rights of others, that should estop him from setting up title in himself. But the charitable and probable view, as we think, is, that the defendant did know or suppose that the house was built on his land, and was willing; else, why

did he tell the appraisers, when he showed them the house, " that his father owned the house, and the land on which it stood and a right of way around it," when, as he now claims, he *then falsified.* It is better, as we think, that he should be kept honest and truthful, than that he should voluntarily make himself a liar.

When Evarts loaned the father $1,000 and took a mort-. gage of the house and little patch of land, on which the house stood, with full covenants of title, it is obvious that Evarts *relied* upon the mortgage as his security for the loan; and when the defendant witnessed the mortgage deed, it was an assurance to Evarts that the defendant had no adverse claims upon the premises thus conveyed; and it was gross negligence, and heedlessness, if he did not know, and gross fraud, if he *did* know, that the premises, thus pledged as security for a loan to its full value, were a part of his own farm. In either case the defendant would be estopped from asserting title in himself. *Louks* v. *Kennison,* 50 Vt. 116. In the last case Kennison showed to the plaintiff the line fence, as the true boundary of his farm; and verily believed it to be the true dividing line between the two lots of land; and, relying upon the statement, a purchaser bought the adjoining farm. There was no intended fraud or bad faith, but a careless negligence, which misled a purchaser of an adjoining farm. The party was presumed to know the boundaries of his own farm; and if he pointed out the wrong one to the detri_ ment of a purchaser, he must stand by his statement, as the *truth,* rather than by averring its falsehood, defraud an innocent purchaser.

The report states that the defendant was present when the appraisers examined and appraised the premises; that he showed them about the same; said that the house and the land on which it stood, and a way around it, belonged to his father, which he had conveyed to Evarts. The defendant will be supposed to know that such proceedings were

the machinery of the law, put in motion by the orators to ascertain and appropriate the assets of Evarts' estate to pay all legal debts, and then distributed in due course. If the defendant had protested against the proceeding, and asserted title in himself, it is not probable that the oratrix would have consented to have set out to her these premises, as her full share in the inheritance. Indeed, there is a very strong probability the other way. Although the report says there was no proof that the orators were influenced in what they did, by what the defendant said and did as to the appraisal, it seems a salutary rule of law, that if the owner of land stands by and sees another erect a house on his land, even if not aware at the time that it stands on his land, yet after he is aware of his ownership the builder dies, and the owner aids and assists in the inventory and appraisal and administration of the house and land as a part of the assets of the estate, and says that the house, and land on which it stands, and right of way around it, belong to the estate, such owner ought to be estopped from thereafter asserting ownership in himself. It is clear that the oratrix believed that the house and land belonged to her father's estate; and that the defendant has so conducted himself in regard to the building of the house by Silas Smith and the mortgage to the intestate, and aiding and assisting in administering and appropriating the property as a part of the assets of the estate, that he should be estopped from asserting title in himself, as against a beneficiary of the estate. And this salutary rule, we think, in this case sound law.

The decree of the Court of Chancery is reversed and cause remanded, and a decree directed for the oratrix, according to the prayer of the bill.